1   Donna R. Tobar, Esq. (Bar No. 223149)
    dtobar@watttieder.com
2   WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
    2040 Main Street, Suite 300
3   Irvine, CA  92614
    Telephone:  949-852-6700
4   Facsimile:   949-261-0771

5   Attorneys for Plaintiff

6

7

8                     **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11  BANNING HEALTHCARE                    No.
    INVESTMENT, LLC, a Washington
12  limited liability company,            VERIFIED DERIVATIVE
    Derivatively on Behalf of MLD         COMPLAINT
13  BANNING INVESTMENT, LLC, a
14  California limited liability company, **JURY TRIAL DEMANDED**

15                  Plaintiff,

16

17        vs.

18  VENTAS, INC., a Delaware
    corporation,
19
                    Defendant,
20
    and
21
    MLD BANNING INVESTMENT,
22  LLC, a California limited liability
    company,
23
                    Nominal Defendant.
24

25

26

27

28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

---

VERIFIED DERIVATIVE COMPLAINT

Plaintiff Banning Healthcare Investment, LLC, derivatively on behalf of MLD Banning Investment, LLC ("Plaintiff"), by and through its attorneys, complains and alleges as follows:

## I. SUMMARY

1.     This is a derivative action in which the majority and managing member of a limited liability company has failed and refused to refinance loans. The reasons the managing member refuses to do so are simple: (1) the loan rates are grossly in excess of current market rates; (2) the loans are interest only, meaning that after the LLC completes paying millions of dollars of unnecessary and excessive interest the LLC will have not reduced the principal amount of the loans at all; and (3) the managing member owns the lender, meaning that the managing member is profiting at the expense of and to the detriment of the non-managing minority member of the LLC, as well as the LLC itself.

2.     Such actions and/or inactions violate fiduciary duties the majority managing member owes both the non-managing minority member of the LLC, as well as the LLC itself. These actions and/or inactions also violate the terms of the LLC's Amended and Restated Operating Agreement.

3.     By this action, Plaintiff seeks to recoup monetary damages the LLC has suffered, remove the managing member from control, and gain the ability to refinance the loans such that they are at competitive market rates and terms.

4.     This action is not a collusive action to confer jurisdiction that the court would otherwise lack.

## II. PARTIES

5.     Banning Healthcare Investment, LLC ("BHI") is, and at all relevant times has been, a Washington limited liability company authorized to do and doing business in California, with its principal place of business in Gig Harbor, Washington. BHI has at all times been, since 2003, a member of nominal defendant MLD Banning Investment, LLC ("MLD").

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

2

VERIFIED DERIVATIVE COMPLAINT

6.      BHI is informed and believes, and on that basis alleges, that defendant Ventas, Inc. ("Ventas") is, and at all relevant times has been, a Delaware corporation licensed to do business and actually doing business in the State of California as a real estate investment trust. BHI is further informed and believes, and on that basis alleges, that Ventas is, and at all relevant times has been, the managing member of nominal defendant MLD.

7.      BHI is informed and believes, and on that basis alleges, that nominal defendant MLD is, and at all relevant times has been, a California limited liability company, licensed to do business and actually doing business in the State of California.

## III.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 USC § 1332(a)(1) in that defendant Ventas is a citizen of Delaware, while BHI is a citizen of Washington, and the amount in controversy exceeds $75,000.

9.      This Court has personal jurisdiction over Ventas because Ventas transacts business in the State of California and this District through its ownership in and management of MLD, as well as because Ventas's wholly owned subsidiary National Healthcare Partners, Inc. ("NHP"), is a lender of money to MLD, in such a way that is systematic and continuous.

10.     Venue is proper in this District under 28 USC §§ 1391(b)(2) and 1391(c)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, the property that is the subject of the action is situated in this District (Banning, California), and defendant Ventas is deemed to reside in any judicial district in which Ventas is subject to the Court's personal jurisdiction in this action.

///

///

///

## IV.  FACTUAL BACKGROUND

**A.    General Background**

11.     MLD was created in 2003.

12.     BHI is a 49% member in MLD. BHI's sole member is Gene Lynn.

13.     Ventas is a 51% member in MLD, and is MLD's managing member.

14.     MLD is a single purpose limited liability company that owns a 120 unit assisted living facility and a 32 unit dementia care facility, all located in Banning, California.

15.     MLD has two loans from NHP. Ventas is NHP's sole owner.

16.     The loans are in the amount of $13.3 million and $4.3 million with current rates of 11.038% and 8.405%, respectively, which will increase over time until they reach 18.7% and 14.239%, respectively, in the year 2033. The loans are interest only loans, and the full amount of principal will be due in 2033.

17.     The loans are personally guaranteed by Gene Lynn, as well as an entity owned by Mr. Lynn, Careage Healthcare of California, Inc.

18.     Pursuant to a written lease, MLD leases its real property to BHO, LLC ("BHO"), which operates the facilities.

19.     The lease payments from BHO are MLD's only source of income.

20.     All losses from MLD Banning are currently allocated for tax purposes to Ventas. Ventas does not and has refused to allocate any of the losses to BHI.

**B.    Ventas Wrongfully Failed to Refinance MLD's Loans At a Market Competitive Rate**

21.     Over time, BHI has become concerned that the loan rates MLD is paying are not competitive loan rates.

22.     BHI is further concerned that, as the loan rates increase, the lease payments from BHO could become insufficient to allow MLD to meet its loan payment obligations, and financial pressures caused by the loan rates could adversely affect MLD's business.

23.   BHI further became concerned that the loan rates being paid by MLD to NHP were not competitive in the current market.

24.   On or about February 9, 2015, BHI sent a letter to Ventas which requested a written response to, *inter alia*, the following questions:

    a.  Has Ventas, while acting as MLD's managing member, and with reference to the existing two loans ever taken any steps to analyze the actual market rates for such loans? If yes, what did you discover? If not, why not?

    b.  Has Ventas, while acting as MLD's managing member, taken any steps to investigate refinancing MLD's loans at any time in the last three years? If yes, what steps did you take, and what were the results? If you took no such steps, why not?

    c.  Has Ventas, while acting as MLD's managing member, performed any analyses as to the likelihood of BHO's rental payments to MLD continuing to be sufficient to allow MLD to make its interest only loan payments as the loan rates increase?

A true and correct copy of the letter is attached as Exhibit A and is incorporated by this reference.

25.   Ventas failed and refused to provide the requested written response.

26.   At the same time, BHI undertook its own independent investigation concerning market loan rates for loans similar to those between MLD and NHP over the preceding three year period, as well as whether MLD's loans could potentially be refinanced through a third-party at a rate and on terms that would be more advantageous to MLD.

27.   BHI's investigation revealed that from approximately July 2011 through the present, the loans from NHP to MLD, totaling approximately $18,000,000, could have been refinanced at a substantially lower interest rate, and could currently be refinanced at approximately 3.75 percent over 35 years, after which all principal and interest could be paid and MLD would own the property free and clear. Such loan payments would be less than MLD is currently paying just

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

5

VERIFIED DERIVATIVE COMPLAINT

1  in interest to NHP.

2  **C.      Demand Allegations**

3      28.     On or about February 25, 2015, not having received a written response

4  to its February 9, 2015 letter, BHI sent Ventas a follow-up letter (the February 25,

5  2015 letter's reference to the previous letter is intended to reference the February 9,

6  2015 letter) reiterating the above questions, and again requesting a written response.

7  The letter went on to explain that because the loans had not been refinanced at 3.75

8  percent at the beginning of 2011, MLD stood to lose $2,811,480 in lost,

9  unnecessary interest payments for the period 2011 through 2015 alone.

10     29.     As a result, BHI demanded that Ventas, within seven days, confirm in

11 writing that it would: (1) take immediate steps to refinance MLD's loans with NHP

12 at current market rates, and (2) cause MLD to retain counsel to file suit against

13 Ventas for violation of fiduciary duties.

14     30.     In the February 25, 2015 letter, BHI further put Ventas on notice that it

15 was in material breach of MLD's Amended and Restated Operating Agreement,

16 and gave it 30 days to remedy its breaches. A true and correct copy of the February

17 25, 2015 letter is attached as Exhibit B and is incorporated by this reference.

18     31.     Ventas failed and refused to take any sufficient action to address the

19 demands in BHI's February 9 and 25, 2015 letters.

20                     **V.  CAUSES OF ACTION**

21                     **FIRST CAUSE OF ACTION**

22     32.     Plaintiff repeats and realleges each and every preceding paragraph as

23 though fully set forth herein.

24     33.     At all relevant times, Ventas, as MLD's managing member, owed

25 MLD and its members fiduciary duties.

26     34.     Plaintiff is informed and believes, and thereon alleges, that Ventas has

27 failed to ascertain whether and to what extent MLD's loans from NHP are in

28 accordance with market rates, and whether or not such loans are in MLD's best

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

6

interests.

35.     Plaintiff is informed and believes, and thereon alleges, that Ventas knows, or reasonably should know, that MLD's loans from NHP are substantially above market rates, and are otherwise adverse to MLD's economic interests. Such loans are, however, extremely beneficial for NHP, and by extension Ventas.

36.     Plaintiff is informed and believes, and thereon alleges, that Ventas has continued such loans and refuses to consider refinancing the loans because such loans are to its own benefit, while BHI and MLD are disproportionately suffering from such loans, which Ventas knows or reasonably should know.

37.     In failing and refusing to investigate and actually refinance the loans and failing to refrain from profiting at the expense of MLD and its members, Ventas has breached fiduciary duties it owes MLD and BHI pursuant to, *inter alia*, California Corp. Code §17704.09.

38.     As a direct and proximate result of Ventas's material breaches, BHI and MLD have incurred and continue to incur damages, including attorneys' fees, costs, and interest, in an amount subject to proof, but in any event in excess of the jurisdictional minimum of this Court.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

39.     BHI repeats and realleges each and every preceding paragraph as though fully set forth herein.

40.     The above-described actions constitute a material breach of MLD's Amended and Restated Operating Agreement, including but not limited to, Article 7.3(g) which requires Ventas, as MLD's manager, to take all actions "necessary to protect, preserve and further the interests of [MLD]...." The preservation of above market rate loans which benefit Ventas and NHP to the detriment of MLD and BHI do not protect, preserve, or further MDL's interests.

///

41.   BHI has performed all conditions, provisions, covenants, restrictions, reservations and charges required by BHI on its part to be performed in accordance with the terms and conditions of the Amended and Restated Operating Agreement.

42.   As a direct and proximate result of Ventas's material breaches, BHI and MLD have incurred and continue to incur damages, including attorneys' fees, costs, and interest, in an amount subject to proof, but in any event in excess of the jurisdictional minimum of this Court.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

43.   Plaintiff repeats and realleges each and every preceding paragraph as though fully set forth herein.

44.   MLD's Amended and Restated Operating Agreement provides in Article 9.2 that the non-Managing Member, in this case BHI, can remove Ventas as Managing Member in the event that Ventas fails to cure any material breach within 30 days of receiving written notice of its material breach.

45.   Despite having received written notice of the material breach and 30 days to cure such breaches, Ventas has failed and refused to cure its breaches.

46.   Plaintiff accordingly requests that Ventas be removed as Managing Member, and that BHI be appointed to take over as Managing Member, all as provided for in Article 9.2 of MLD's Amended and Restated Operating Agreement.

47.   BHI has a right to receive the benefit of the terms of the Amended and Restated Operating Agreement and has performed all conditions, provisions, covenants, restrictions, reservations and charges required by BHI on its part to be performed in accordance with the terms and conditions of the Amended and Restated Operating Agreement.

48.   Plaintiff has no adequate legal remedy if Ventas fails to perform in accordance with the terms and conditions of the Amended and Restated Operating Agreement.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

8

VERIFIED DERIVATIVE COMPLAINT

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Ventas as follows:

1.    For monetary damages, according to proof at trial;

2.    For pre-judgment and post-judgment interest at the maximum legal rate allowed by law, according to proof;

3.    For removal of Ventas as MLD's Managing Member;

4.    For BHI to be appointed as MLD's replacement Managing Member in accordance with MLD's Amended and Restated Operating Agreement;

5.    For reasonable attorneys' fees and costs allowable by statute, contract, or otherwise, according to proof; and

6.    For such other relief as the Court deems just and proper.

Dated:  April 10, 2015.                    WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.


By: /s/ Donna R. Tobar, Esq.
    Donna R. Tobar
    dtobar@watttieder.com
    Watt, Tieder, Hoffar & Fitzgerald, LLP
    2040 Main Street, Suite 300
    Irvine, CA  92614
    Attorneys for Plaintiff

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

9

VERIFIED DERIVATIVE COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

April 10, 2015.                                    WATT, TIEDER, HOFFAR & FITZGERALD,
                                                   L.L.P.


                                                   By: /s/ Donna R. Tobar, Esq.
                                                   _____
                                                      Donna R. Tobar
                                                      dtobar@watttieder.com
                                                      Watt, Tieder, Hoffar & Fitzgerald, LLP
                                                      2040 Main Street, Suite 300
                                                      Irvine, CA  92614
                                                      Attorneys for Plaintiff

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

10

VERIFIED DERIVATIVE COMPLAINT

## VERIFICATION

1
2   I, _GENE E. LYNN_, declare:

3   I am the sole member of plaintiff Banning Healthcare Investment, LLC,
4   which has been a member in MLD Banning Investment, LLC since its inception.
5   Pursuant to Federal Rule of Civil Procedure 23.1, I certify under penalty of perjury
6   that I have read and reviewed the Verified Derivative Complaint and authorized its
7   filing. Based upon my investigation and that of counsel, the contents of this
8   Verified Derivative Complaint are true to the best of my knowledge, information,
9   and belief. As such, regarding the allegations of which I have personal knowledge, I
10  believe them to be true and, regarding the allegations of which I do not have
11  personal knowledge, I believe them to be true based on available information and
12  documentation, including the business records and communications of BHI and
13  MLD.

14  Pursuant to 28 U.S.C. §1746 and Federal Rule of Civil Procedure 23.1, I
15  verify under penalty of perjury under the laws of the United States of America that
16  the foregoing is true and correct.

17  Executed on this ___ day of April, 2015.

18
19                              Banning Healthcare Investment, LLC
20
21                              By: _____
22                                  GENE E. LYNN
23                              Its: 100% sole member
24
25
26  9642167.1 103823.00001
27
28

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

11

VERIFIED DERIVATIVE COMPLAINT



**CAREAGE**

4411 Pt. Fosdick Drive
Suite 203
P.O. Box 1969
Gig Harbor, WA 98335
FAX (253) 853-5280
Phone (253) 853-4457

Aaron Werbel
Asset Manager
Ventas, Inc.
353 N. Clark Street, Suite 3300
Chicago, IL 60654

February 9, 2015

Dear Aaron,

I am writing this letter on behalf of Banning Healthcare Investment, LLC ("BHI"), the minority member of MLD Banning LLC ("MLD"). We request that you respond in writing with specific answers to the questions posed below no later than seven days from the date of this letter.

In order to preface my questions, here are the basic facts:

- MLD has two loans with National Healthcare Partners ("NHP") in the amount of $13.3 million and $4.3 million with current rates of 11.038% and 8.405%, respectively, which will increase over time until they reach 18.7% and 14.239% respectively in the year 2033.

- The loans are interest only loans, and the full amount of principal will be due in 2033.

- MLD is making loan payments solely out of lease payments it receives from BHO LLC ("BHO"). BHO's lease payments are personally guaranteed by Gene Lynn and Careage Healthcare of California, Inc.

- All losses as identified on the MLD financial statements, which are substantially generated through the depreciation of the real property owned by MLD and leased to BHO are currently taken by Ventas, Inc., as the managing member of MLD. The losses are not being allocated to BHI.

As you will doubtless realize, the interest rates referenced above are NOT competitive in today's market, and indeed, have been significantly above market for at least the last three years. The overall impact of this financial arrangement is troubling for many reasons, not the least of which is that by servicing  debt with an above market interest rate, MLD has been giving up an opportunity to be profitable and make distributions to its members.

Given the above, BHI requests that you fully answer the following questions:

- Has Ventas, while acting as MLD's managing member, and with reference to the existing two loans ever taken any steps to analyze the actual market rates for such loans? If yes, what did you discover? If not, why not?



 **CAREAGE**

4411 Pt. Fosdick Drive
Suite 203
P.O. Box 1969
Gig Harbor, WA 98335
FAX (253) 853-5280
Phone (253) 853-4457

- Has Ventas, while acting as MLD's managing member, taken any steps to investigate refinancing MLD's loans at any time in the last three years? If yes, what steps did you take, and what were the results? If you took no such steps, why not?

- Has Ventas, while acting as MLD's managing member, performed any analyses as to the likelihood of BHO's rental payments to MLD continuing to be sufficient to allow MLD to make its interest only loan payments as the loan rates increase? If yes, what were the results of your analysis? If you did not perform any such analysis, why not?

Thank you for your prompt attention to answering these basic questions. Once again, I request that you provide full responses no later than seven days from the date of this letter.

Sincerely,

David Feeney
Chief Financial Officer
Careage



Banning Healthcare Investments

P.O. Box 1969 . Gig Harbor, WA 98335

February 25, 2015

Aaron Werbel
Asset Manager
Ventas, Inc.
353 N. Clark Street, Suite 3300
Chicago, IL 60654

Dear Aaron,

This letter, on behalf of Banning Healthcare Investment, LLC ("BHI"), the minority member of MLD Banning LLC ("MLD"), is in follow-up to my February 6, 2015 letter, to which we have received no written response.

Initially, BHI renews its requests that you respond to its February 6, 2015 letter, as well as this letter, *in writing*, no more than seven days from the date of this letter. Answers to the following questions still need to be provided:

- Has Ventas, while acting as MLD's managing member, ever taken any steps to analyze the actual market rates for MLD's two outstanding loans with National Healthcare Partners ("NHP")? If yes, what did you discover? If not, why not?

- Has Ventas, while acting as MLD's managing member, taken any steps to investigate refinancing MLD's loans with NHP at any time in the last three years? If yes, what steps did you take, and what were the results? If you took no such steps, why not?

- Has Ventas, while acting as MLD's managing member, performed any analyses as to the likelihood of BHO's rental payments to MLD continuing to be sufficient to allow MLD to make its interest only loan payments to NHP as the loan rates increase? If yes, what were the results of your analysis? If you did not perform any such analysis, why not?



EXHIBIT B PAGE 14

BHI has begun looking into such issues, and determined that for several years MLD has been paying loan rates that are well above market rates. For example, as of 2012, the market rate for MLD's loans would have been approximately 3.5%. We have also been informed that the loans could easily be refinanced today at a rate of approximately 3.75%. Given that, BHI believes that MLD has needlessly paid National Healthcare Partners ("NHP") more than $2.81 million in interest payments between 2011 and 2015 alone that could have easily been avoided had Ventas simply refinanced the loans.

Ventas's failure to have refinanced the loans previously is a material breach of Article 7.3(g) of MLD's Amended and Restated Operating Agreement. Demand is made that your material breach be rectified within 30 days of the date of this letter. If you do not do so, BHI notifies you that it will seek to have you removed as MLD's Managing Member.

Given the above, BHI demands that as BHI's manager, Ventas confirm within seven days of the date of this letter that the following will occur:

- Ventas will take immediate steps to refinance MLD's loans with NHP at current market rates.

- That Ventas will cause to MLD retain counsel to file suit against Ventas for violation of fiduciary duties

If you do not take the demanded actions, BHI plans to file the enclosed draft derivative complaint. While we sincerely hope that action will not be necessary, we feel that it is imperative that we act to protect MLD's interests.

Please let me know if you have any questions or comments.

Sincerely,

David Feeney
Banning Healthcare Investments

EXHIBIT B PAGE 15

1    Donna R. Tobar, Bar No. 223149
      dtobar@watttieder.com
2    Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
      2040 Main Street, Suite 300
3    Irvine, CA  92614
      Telephone:   949-852-6700
4    Facsimile:   949-261-0771

5    Christopher Wright
      cwright@watttieder.com
6    Mark Rosencrantz
      mrosencrantz@watttieder.com
7    Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
8    1215 Fourth Avenue, Suite 2210
      Seattle, WA  98161
9    Telephone:   206-204-5800
      Facsimile:   206-204-0284

10

11   Attorneys for Plaintiff

12

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

13

| | |
|---|---|
| 14  BANNING HEALTHCARE INVESTMENT, LLC, a Washington limited liability company, Derivatively on Behalf of MLD BANNING INVESTMENT, LLC, a California limited liability company, | No. |
| | VERIFIED DERIVATIVE COMPLAINT |
| | JURY TRIAL DEMANDED |
|          Plaintiffs, | |
|      v. | |
| VENTAS, INC., a Delaware corporation, | |
|          Defendants, | |
| and | |
| MLD BANNING INVESTMENT, LLC, a California limited liability company, | |
|          Nominal Defendant. | |

26

DERIVATIVE COMPLAINT - 1

EXHIBIT B PAGE 16

1    Plaintiff Banning Healthcare Investment, LLC, derivatively on behalf of MLD Banning

2    Investment, LLC, by and through its attorneys, complains and alleges as follows:

### I. SUMMARY

4    1.    This is a derivative action in which the majority and managing member of a

5    limited liability company has failed and refused to refinance loans. The reasons the managing

6    member refuses to do so are simple: (1) the loan rates are grossly in excess of current market

7    rates; (2) the loans are interest only, meaning that after the LLC completes paying millions of

8    dollars of unnecessary and excessive interest the LLC will have not reduced the principal amount

9    of the loans at all; and (3) the managing member owns the lender, meaning that the managing

10   member is profiting at the expense of the non-managing minority member of the LLC, as well as

11   the LLC itself.

12   2.    Such actions violate fiduciary duties the majority managing member owes both

13   non-managing minority member of the LLC, as well as the LLC itself. They also violate the terms

14   of the LLC's Amended and Restated Operating Agreement.

15   3.    By this action, plaintiff seeks to recoup monetary damages the LLC has suffered,

16   remove the managing member from control, and gain the ability to refinance the loans such that

17   they are at competitive market rates and terms.

### II. PARTIES

19   4.    Plaintiff Banning Healthcare Investment, LLC ("BHI") is, and at all relevant times

20   has been, a Washington limited liability company authorized to do and doing business in

21   California, with its principal place of business in Gig Harbor, Washington. BHI has at all times

22   been, since 2003, a member of nominal defendant MLD Banning Investment, LLC ("MLD").

23   5.    BHI is informed and believes, and on that basis alleges, that defendant Ventas, Inc.

24   ("Ventas") is, and at all relevant times has been, a Delaware corporation licensed to do business

25   and actually doing business in the State of California. BHI is further informed and believes, and

26

DERIVATIVE COMPLAINT - 2

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

1    on that basis alleges, that Ventas is, and at all relevant times has been, the managing member of

2    nominal defendant MLD.

3          6.     BHI is informed and believes, and on that basis alleges, that nominal defendant

4    MLD is, and at all relevant times has been, a California limited liability company, licensed to do

5    business and actually doing business in the State of California.

6                  **III.    JURISDICTION AND VENUE**

7          7.     This Court has subject matter jurisdiction over this matter pursuant to 28 USC §

8    1332(a)(1) in that defendant Ventas is a citizen of Delaware, while BHI is a citizen of

9    Washington, and the amount in controversy exceeds $75,000.

10         8.     This Court has personal jurisdiction over Ventas because Ventas transacts business

11   in the State of California and this District through its ownership in and management of MLD, as

12   well as because Ventas's wholly owned subsidiary National Healthcare Partners, Inc. ("NHP"), is

13   a lender of money to MLD, in such a way that is systematic and continuous.

14         9.     Venue is proper in this District under 28 USC §§ 1391(b)(2) and 1391(c)(2).

15                 **IV.  FACTUAL BACKGROUND**

16   **A.    General Background**

17         10.    MLD was created in 2003.

18         11.    BHI is a 49 percent member in MLD. BHI's sole member is Gene Lynn.

19         12.    Ventas is a 51% member in MLD, and is MLD's managing member.

20         13.    MLD is a single purpose limited liability company that owns a seventy-two unit

21   independent living facility, a 50 unit assisted living facility, and a 17 unit dementia care facility,

22   all located in Banning, California.

23         14.    MLD has two loans from NHP. Ventas is NHP's sole owner.

24         15.    The loans are in the amount of $13.3 million and $4.3 million with current rates of

25   11.038% and 8.405%, respectively, which will increase over time until they reach 18.7% and

26

DERIVATIVE COMPLAINT - 3

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

1   14.239% respectively in the year 2033. The loans are interest only loans, and the full amount of

2   principal will be due in 2033.

3        16.    The loans are personal guaranteed by Gene Lynn, as well as an entity owned by

4   Mr. Lynn, Careage Healthcare of California, Inc.

5        17.    Pursuant to a written lease MLD leases its real property to BHO, LLC ("BHO"),

6   which operates the facilities.

7        18.    The lease payments from BHO are MLD's only source of income.

8        19.    All depreciation for the real property owned by MLD and leased to BHO is

9   currently taken by Ventas, Inc., as the managing member of MLD. Ventas refuses to allocate any

10   of the depreciation to BHI.

11   **B.    Ventas Wrongfully Failed to Refinance MLD's Loans At a Market Competitive Rate**

12        20.    Over time, BHI has become concerned that the loan rates MLD is paying are not

13   competitive loan rates.

14        21.    BHI is further concerned that as the loan rates increase, the lease payments from

15   BHO could become insufficient to allow MLD to meet its loan payment obligations, and financial

16   pressures caused by the loan rates could adversely affect MLD's business.

17        22.    BHI further became concerned that the loan rates being paid by MLD to NHP

18   were not competitive in the current market.

19        23.    On or about February 6, 2015, BHI sent a letter to Ventas which requested a

20   written response to, *inter alia*, the following questions:

21
22           a.  Has Ventas, while acting as MLD's managing member, and with reference to the existing two loans ever taken any steps to analyze the actual market rates for such loans? If yes, what did you discover? If not, why not?

23
24           b.  Has Ventas, while acting as MLD's managing member, taken any steps to investigate refinancing MLD's loans at any time in the last three years? If yes, what steps did you take, and what were the results? If you took no such steps, why not?

25

26

DERIVATIVE COMPLAINT - 4

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

EXHIBIT B PAGE 19

c. Has Ventas, while acting as MLD's managing member, performed any analyses as to the likelihood of BHO's rental payments to MLD continuing to be sufficient to allow MLD to make its interest only loan payments as the loan rates increase?

A true and correct copy of the letter is attached as Exhibit A.

24.     Ventas failed and refused to provide the requested written response.

25.     At the same time BHI undertook its own independent investigation concerning market loan rates for loans similar to those between MLD and NHP over the preceding three year period, as well as whether MLD's loans could potentially be refinanced through a third-party at a rate and on terms that would be more advantageous to MLD.

26.     BHI's investigation revealed that from approximately July 2011 through the present the loans from NHP to MLD, totaling approximately $18,000,000, could have been refinanced at a substantially lower interest rate, and could currently be refinanced at approximately 3.75 percent over 35 years, after which all principal and interest could be paid and MLD would own the property free and clear. Such loan payments would be less than MLD is currently paying just in interest to NHP.

**C.      Demand Allegations**

27.     On or about February ___, 2015, not having received a written response to its February 6, 2015 letter, BHI sent Ventas a follow-up letter reiterating the above questions, and again requesting a written response. The letter went on to explain that because the loans had not been refinanced at 3.75 percent at the beginning of 2011, MLD stood to lose $2,811,480 in lost, unnecessary interest payments for the period 2011 through 2015 alone.

28.     As a result, BHI demanded that Ventas within seven days confirm in writing that it would: (1) take immediate steps to refinance MLD's loans with NHP at current market rates, and (2) cause MLD retain counsel to file suit against Ventas for violation of fiduciary duties.

29.     In the letter BHI further put Ventas on notice that was in material breach of MLD's Amended and Restated Operating Agreement, and gave it 30 days to remedy its breaches.

DERIVATIVE COMPLAINT - 5

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

1    30.    Ventas failed and refused to respond to the February ___, 2015 demand as

2  requested.

### V. CAUSES OF ACTION

**A.    FIRST CAUSE OF ACTION**

4

5    31.    BHI repeats and realleges each and every preceding paragraph as though fully set

6  forth herein.

7    32.    Ventas has failed to ascertain whether and to what extent MLD's loans from NHP

8  are in accordance with market rates, and whether or not such loans are in MLD's best interests.

9    33.    Ventas knows, or reasonably should know, that MLD's loans from NHP are

10  substantially above market rates, and are otherwise adverse to MLD's economic interests. Such

11  loans are, however, extremely beneficial for NHP, and by extension Ventas.

12    34.    Ventas has continued such loans and refuses to consider refinancing the loans

13  because such loans are to its benefit, while BHI and MLD are disproportionately suffering from

14  such loans, which Ventas knows or reasonably should know.

15    35.    In failing and refusing to investigate and actually refinance the loans, Ventas has

16  breached fiduciary duties it owes MLD and BHI pursuant to, *inter alia*, California Corp. Code

17  §17704.09.

18    36.    As a direct and proximate result of Ventas's material breaches, BHI and MLD

19  have incurred and continue to incur damages, including attorneys' fees, costs, and interest, in an

20  amount subject to proof, but in any event in excess of the jurisdictional minimum of this Court.

**B.    SECOND CAUSE OF ACTION**

21

22    37.    BHI repeats and realleges each and every preceding paragraph as though fully set

23  forth herein.

24    38.    The above-described actions constitute a material breach of MLD's Amended and

25  Restated Operating Agreement, including but not limited to Article 7.3(g) which requires Ventas,

26

DERIVATIVE COMPLAINT - 6

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

EXHIBIT B PAGE 21

1  as MLD's manager, to take all actions "necessary to protect, preserve and further the interests of

2  [MLD]...." The preservation of above market rate loans which benefit Ventas and NHP to the

3  detriment of MLD and BHI do not protect preserve, or further MDL's interests.

4        39.    As a direct and proximate result of Ventas's material breaches, BHI and MLD

5  have incurred and continue to incur damages, including attorneys' fees, costs, and interest, in an

6  amount subject to proof, but in any event in excess of the jurisdictional minimum of this Court.

7  **C.**    **THIRD CAUSE OF ACTION**

8        40.    BHI repeats and realleges each and every preceding paragraph as though fully set

9  forth herein.

10        41.    MLD's Amended and Restated Operating Agreement provides in Article 9.2 that

11  the non-Managing Member, in this case BHI, can remove Ventas as Managing Member in the

12  event that Ventas fails to cure any material breach within 30 days of receiving written notice of its

13  material breach.

14        42.    Despite having received written notice of the material breach and 30 days to cure

15  such breaches, Ventas has failed and refused to cure its breaches.

16        43.    BHI accordingly requests that Ventas be removed as Managing Member, and that

17  BHI be appointed to take over as Managing Member, all as provided for in Article 9.2 of MLD's

18  Amended and Restated Operating Agreement.

19                **VI.**   **PRAYER FOR RELIEF**

20  WHEREFORE, BHI prays for relief against Ventas as follows:

21      1.    For monetary damages, according to proof at trial;

22      2.    For pre-judgment and post-judgment interest in the maximum amount allowed by

23  law, according to proof;

24      3.    For removal of Ventas as MLD's Managing Member;

25      4.    For BHI to be appointed as MLD's replacement Managing Member in accordance

26

DERIVATIVE COMPLAINT - 7

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

1   with MLD's Amended and Restated Operating Agreement;

2       5.    For reasonable attorneys' fees and costs allowable by statute, contract, or

3   otherwise, according to proof; and

4       6.    For such other relief as the Court deems just and proper.

5       DATED this ___ day of _____, 2015.

6               WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.

8           By:_____

9               Donna R. Tobar

                  Christopher Wright

10             Mark Rosencrantz

11             *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DERIVATIVE COMPLAINT - 8

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

EXHIBIT 13 PAGE 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all issue which are subject to adjudication by a trier of fact.

DATED this ___ day of _____, 2015.

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.

By:_____
      Donna R. Tobar
      Christopher Wright
      Mark Rosencrantz
      *Attorneys for Plaintiff*

DERIVATIVE COMPLAINT - 9

Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

EXHIBIT B PAGE 24

| | |
|---|---|
| 1 | <div align="center">**VERIFICATION**</div> |
| 2 | I, _____, declare: |
| 3 | I am the managing member of plaintiff Banning Healthcare Investment, LLC, which has |
| 4 | been a member in MLD Banning Investment, LLC since its inception. I certify under the penalty |
| 5 | of perjury that I have read and reviewed the Verified Derivative Complaint and authorized its |
| 6 | filing. Based upon my investigation and that of counsel, the contents of this Verified Derivative |
| 7 | Complaint are true to the best of my knowledge, information, and belief. |
| 8 | DATED this ___ day of _____, 2015. |
| 9 | |
| 10 | Banning Healthcare Investment, LLC |
| 11 | |
| 12 | By:_____ |
| 13 | Its:_____ |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

DERIVATIVE COMPLAINT - 10

**Watt, Tieder, Hoffar & Fitzgerald, L.L.P.**
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
206-204-5800/206-204-0284 fax

EXHIBIT B PAGE 25